IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FREDDIE WILSON,
    Petitioner,

vs.                                      Case No.:  4:19cv358/WS/EMT

KATHLEEN HAWK SAWYER,
DIRECTOR OF BOP,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Freddie Wilson ("Wilson"), proceeding pro se, commenced this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking time credits pursuant to the First Step Act ("FSA") (ECF No. 1).  The U.S. Attorney's Office ("the Government") filed a Response and Supplemental Response, with supporting evidentiary materials (ECF Nos. 8, 22).  Wilson replied to the Government's arguments, and submitted supporting evidentiary materials (ECF Nos. 4, 11, 12, 13, 14, 24).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C).  After careful

consideration of the filings and attachments presented by the parties, it is the opinion of the undersigned that the habeas petition should be denied.

I.  BACKGROUND

Wilson was convicted in the United States District Court for the Middle District of Florida, Case No. 8:13-cr-00207-SCB-TGW, of six counts of Theft of Government Funds, in violation of 18 U.S.C. § 641 (Counts 1–6), six counts of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Counts 7–12), one count of Conducting an Unlawful Monetary Transaction, in violation of 18 U.S.C. § 1957 (Count 13); and one count of Obstructing a Criminal Investigation, in violation of 18 U.S.C. § 1505 (Count 14).[1]  *See United States v. Wilson*, 788 F.3d 1298, 1304 (11th Cir. 2015).  On October 8, 2013, the district court sentenced Wilson to a total term of 102 months in prison followed by a total term of 36 months of supervised release.  *See id.*

On March 13, 2019, the federal Bureau of Prisons ("BOP") transferred Wilson from the federal correctional institution in Talladega, Alabama, to spend a portion of the final months of his term of imprisonment in pre-release custody at a

---

[1] Although the jury found Wilson guilty on all fourteen counts, the district court dismissed the Aggravated Identity Theft charge (Count 10) post-verdict, because the corresponding Theft of Government Funds conviction in Count 4 was a misdemeanor. *See Wilson*, 788 F.3d at 1304 n.1.

Page 3 of 14

Community Corrections Center ("CCC") in Tallahassee, Florida, operated by Keeton Corrections, Inc. ("KCI") (*see* ECF No. 10-1, Declaration of Kimberly Spence ¶ 2).  *See* 18 U.S.C. §§ 3624(c)(1), (g)(2)(B).

On July 12, 2019, Wilson's BOP Community Corrections Manager ("CCM"), Tracey Broadnax, approved Wilson's placement on home confinement/detention to serve the final portion of his term of imprisonment (*see* ECF No. 14 at 2, attached Home Confinement and Community Control Agreement approved by CCM Tracey Broadnax).  *See* 18 U.S.C. § 3624(c)(2) (authorizing the BOP to place a prisoner in home confinement).  The BOP was authorized to determine the conditions of Wilson's home confinement/detention and to revoke it if he violated those conditions (*see* ECF No. 14, attached Home Confinement and Community Control Agreement).  *See* 18 U.S.C. §§ 3624(g)(2)(A), 3624(g)(4)–(5).  The BOP delegated Wilson's supervision to the United States Probation Office ("USPO") *(see id.)*.  *See* 18 U.S.C. § 3624(g)(7).

On August 5, 2019, while Wilson was on home confinement/detention, he filed this habeas case (ECF No. 1).  On October 11, 2019, Wilson was released by

the BOP to the term of supervised release imposed by the sentencing court (*see* ECF No. 16).[2]

Wilson's habeas petition seeks 10 days of time credits on his term of supervised release for every 30 days of his successful participation in evidence-based recidivism reduction programming or productive activities, pursuant to § 3632(b)(4) of the First Step Act (*see* ECF No. 1 at 3, 7–14; *see also* ECF No. 11 at 13–14).[3]  Wilson specifically seeks time credits for the following:  (1) his successful completion of the "24/7 Dad Curriculum" on June 26, 2018, (2) his completion of the BOP's Residential Drug Abuse Treatment Program ("RDAP") on July 10, 2018, (3) his job assignment as a dormitory orderly at Talladega-FCI while he was housed there, (4) his participation in and successful completion of a transitional drug abuse treatment program at DISC Village, Inc., from April 3, 2019 to October 8, 2019, (5) his job search and employment activities during his prerelease confinement and while on supervised release, and (6) his attendance at church services during his prerelease confinement and while on supervised release

---

[2] Under Eleventh Circuit precedent, Wilson's release from BOP custody to supervised release does not moot his § 2241 petition.  *See Dawson v. Scott*, 50 F.3d 884, 886 (11th Cir. 1995); *see also, e.g., Mitchell v. Middlebrooks*, 287 F. App'x 772, 774–75 (11th Cir. 1008).

[3] The court refers to the page numbers automatically assigned by the court's electronic filing system, rather than the page numbers Wilson assigned.

Case No.:  4:19cv358/WS/EMT

(ECF Nos. 4, 12, 19). Wilson contends he is entitled to 70–100 days of time credits under the FSA (*see* ECF No. 1 at 3, 7–14). He asserts the time credits would reduce his term of home confinement/detention to time served, thus permitting him to begin service of his term of supervised release earlier than October 11, 2019, the date it actually commenced (*see* ECF No. 1 at 3, 10–14; ECF No. 11 at 13–14).

The Government contends Wilson is not entitled to time credits for the recidivism reduction programs he completed prior to December 21, 2018, the effective date of the First Step Act ("FSA"), because the FSA expressly provides that credit is not available for programs completed prior to that date (ECF No. 8 at 2–3).

With respect to the other programs for which Wilson seeks credit, the Government contends Wilson failed to comply with the BOP's multi-stage administrative grievance process provided in 28 C.F.R. §§ 542.10–19 prior to filing his habeas petition; therefore, the habeas petition should be dismissed without prejudice to Wilson's re-filing upon completion of the administrative grievance process (ECF No. 8 at 3–4; ECF No. 22). The Government contends Wilson was still serving his term of imprisonment in prerelease custody of the BOP when he filed his § 2241 petition on August 5, 2019, and was thus required to comply with the BOP's Administrative Remedy Program set forth in BOP Program Statement

No. 1330.18, except that Wilson was not required to attempt "informal resolution" by filing a BP-8 form (*see* ECF No. 22 at 1–3; Exhibit 1).  The Government contends Wilson was required to initially file a formal Administrative Remedy Request on the BP-9 form, then appeal to the appropriate Regional Director on the BP-10 form, and then appeal to the General Counsel on the BP-11 form (*id.*).

Wilson contends he was not subject to the BOP's Administrative Remedy Program because he was not in a BOP institution after he was transferred from Talladega-FCI, on March 13, 2019 (ECF No. 24 at 5–6).  Wilson contends that upon his placement on home confinement/detention, he could not have filed a request for administrative remedy because he was under the supervision of the USPO, not the BOP (*id.* At 8–15, 20–21).

II.   DISCUSSION

Federal statutes require that a person who has been sentenced to a term of imprisonment be committed to the custody of the BOP "until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624." 18 U.S.C. § 3621(a).  Title I of the First Step Act, titled "Recidivism Reduction," consists of seven sections.  Section 101 required the Attorney General to develop and release publicly on the Department of Justice ("DOJ") website, within 210 days after the date of enactment of the FSA, a risk and

needs assessment system. The system must (1) determine the recidivism risk level (minimum, low, medium, or high) of each prisoner at intake, (2) assess and determine the risk of violent or serious misconduct of each prisoner, (3) determine the type and amount of programming for each prisoner and assign programming accordingly, (4) reassess each prisoner periodically and adjust programming assignments accordingly, (5) reassign prisoners to appropriate programs based on revised determinations, (6) determine when to provide incentives and rewards for successful participation in programming or productive activities, and (7) determine when a prisoner is ready to transfer into prerelease custody or supervised release. First Step Act, Pub. L. 115-391, § 101(a), 132 Stat. 5194, 5195–5208 (2018) (promulgating 18 U.S.C. §§ 3631–3635). The Attorney General developed and publicly released the risk and needs assessment system ("RNAS") on July 19, 2019. *See* https://nij.ojp.gov.

Subsection 102(a) of the FSA provides for implementation of the RNAS by the BOP. *See* First Step Act, Pub. L. 115-391, § 102(a), 132 Stat. at 5208–5210 (2018) (promulgating 18 U.S.C. § 3621(h)). It requires the Director of the BOP to (1) initially assess each prisoner, (2) begin to assign prisoners to appropriate programming, and (3) implement necessary assessment tools not later than 180 days

Page 8 of 14

after the Attorney General released the RNAS (i.e., not later than January 15, 2020). *See id.* (promulgating 18 U.S.C. § 3621(h)(1)).

The FSA then provides a two-year "Phase-in," beginning January 15, 2020, for the BOP to actually provide programming to all prisoners, and to develop and validate the assessment tool to be used for periodic reassessments. *See* First Step Act, Pub. L. 115-391, § 102(a), 132 State. 5194, 5208–5210 (promulgating 18 U.S.C. § 3621(h)(2)).

In addition to assessing prisoners and assigning them to programming, expanding programming, and developing reassessment tools, the FSA requires the BOP to develop additional policies to provide incentives and rewards for inmates in BOP custody who successfully participate in evidence-based recidivism reduction programming or productive activities. *See* First Step Act, Pub. L. 115-391, § 102(a), 132 Stat. at 5198–5203 (2018) (promulgating 18 U.S.C. § 3632). One of those incentives is earning time credits which, when applied by the BOP, move the prisoner toward transfer from a BOP institution into BOP "prerelease custody" (i.e., either home confinement/detention or a residential reentry center) or transfer from BOP custody to supervised release under the supervision of the USPO (if the sentencing court included a term of supervised release after imprisonment as part of

the prisoner's sentence). *Id.*, 132 Stat. 5194, 5198–5203 (promulgating U.S.C. § 3632(b)(4)(A)–(C)).

The time credit provisions provide as follows:

> **(4) Time credits—**
>
> **(A) In general.—**A prisoner . . . who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> **(i)** A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> **(ii)** A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> **(B) Availability—**A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—
>
> **(i)** prior to the date of enactment of this subchapter;
>
> . . .
>
> **(C) Application of time credits toward prerelease custody or supervised release.—**Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(b)(4)(A)–(C). When the prisoner has **earned** time credits in an amount equal to the remainder of his or her term of imprisonment, the BOP must transfer the prisoner to prerelease custody or supervised release. *See* First Step Act, Pub. L. 115-391, § 102(b)(1)(B), 132 Stat. at 5210–5213 (2018) (promulgating 18 U.S.C. § 3624(g)) (emphasis added).

Although the FSA does not **require** the BOP to provide the time credit incentives and rewards prior to January 15, 2020 (when the two-year "Phase-in" expires), the FSA **authorizes** the BOP, beginning July 19, 2019, to "**offer**" the time credit to prisoners who successfully participate in such programming and productive activities. *See* First Step Act, Pub. L. 115-391, § 102(a), 132 Stat. 5194, 5209 (2018) (promulgating 18 U.S.C. § 3621(h)(4)) (emphasis added).

Here, there are two reasons Wilson has not shown he is entitled to federal habeas relief. The first is that Wilson failed to exhaust the BOP's available administrative remedies; indeed, did not even ask the BOP to consider his request for time credits prior to filing his § 2241 petition. Federal regulations afford prisoners administrative review of the computation of their time credits (*see* Government's Supplemental Response, attached BOP Program Statement No. 1330.18, ECF No. 22-1). *See* 28 C.F.R. §§ 542.10–542.19. Because the BOP has

the responsibility for determining credit awards, "a federal prisoner dissatisfied with computation of his sentence must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence." *United States v. Williams*, 425 F.3d 987, 990 (11th Cir. 2005) (internal quotation marks omitted). Only "after the exhaustion of administrative remedies" may a claim for credit for time served be brought under § 2241. *United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000). Once a petitioner has exhausted his administrative remedies within the BOP, the district court may review the constitutionality of the BOP's decisions and its statutory construction. *See Rodriguez v. Lamer*, 60 F.3d 745, 747 (11th Cir. 1995).

The BOP's Administrative Remedy Program ("ARP") applies "to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement." 28 C.F.R. § 542.10(b); BOP Program Statement No. 1330.18, p.1. The only inmates to which the ARP does not apply is inmates confined "in other non-federal facilities." *Id.*

As previously discussed, Wilson was in the BOP's home confinement/detention program when the provisions of the FSA applicable to the BOP took effect on July 19, 2019. Home confinement/detention is one of the BOP's

Case No.: 4:19cv358/WS/EMT

Community Corrections Programs.  *See* BOP Program Statement No. 7310.04, pp. 5–6); BOP Program Statement No. 7320.01.

According to the ARP, Wilson should have mailed a formal request for time credits to his Community Corrections Manager ("CCM"), Tracey Broadnax (*see* ECF No. 14 at 2, attached Home Confinement and Community Control Agreement approved by CCM Tracey Broadnax).  *See* 28 C.F.R. §§ 542.11(b), 542.13, 542.14(a), 542.14(c)(4); BOP Program Statement No. 1330.18, pp. 2–6; BOP Program Statement No. 7320.01.  If Wilson was not satisfied with CCM Broadnax's decision, he could have appealed it to the General Counsel.  *See* 28 C.F.R. §§ 542.14(d)(5); BOP Program Statement No. 1330.18, pp. 6–7.

The Government submitted a printout from the BOP's SENTRY system, which shows that the last date Wilson filed a request for administrative remedy was May 30, 2018, when he was still housed at Talladega-FCI (*see* ECF No. 22-2). Wilson has not demonstrated he submitted an ARP request to the BOP regarding time credits under the FSA.  Therefore, Wilson did not exhaust his administrative remedies prior to filing his § 2241 petition.

The second obstacle to Wilson's obtaining federal has relief is that he has not shown that the BOP's failure to award time credits violated the FSA.  As discussed *supra*, when Wilson filed his § 2241 petition, the BOP was not **required** to provide

prisoners with the FSA's time credits; rather, the BOP was simply **authorized to offer** them as a preliminary measure during the two-year "Phase-in" of the RNAS. *See* 18 U.S.C. § 3621(h)(3)–(4).  The BOP's failure to award Wilson time credits during the two-year "Phase-in" does not violate the FSA.

III.  CONCLUSION

Wilson failed to demonstrate he exhausted his administrative remedies prior to filing his § 22241 petition.  Additionally, he failed to demonstrate that the BOP violated the Constitution or federal law by failing to award time credits during the two-year "Phase-in" provisions of the FSA.  Therefore, Wilson's § 2241 petition should be denied.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED**.

At Pensacola, Florida this 9<u>th</u> day of January 2020.

>  */s/ Elizabeth M. Timothy*
>  **ELIZABETH M. TIMOTHY**
>  **CHIEF UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**